**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAWRENCE P. FISHER II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No: 05-2454 (HHK) |
| ) | |
| THE SOCIALIST PEOPLE'S LIBYAN ) | |
| ARAB JAMAHIRIYA, *ET AL.,* ) | |
| ) | |
| Defendants. ) | |

## MOTION TO DISMISS

Defendants, The Socialist People's Libyan Arab Jamahiriya and The External Security Organization (hereafter "Libya") move to dismiss plaintiff's complaint for lack of subject-matter and personal jurisdiction, and in the alternative for failure to state a cause of action for which relief can be granted. A memorandum of points and authorities follows.

Dated:     January 19, 2007

Respectfully Submitted,

  //s//
Arman Dabiri
Law Offices of Arman Dabiri &
    Associates, PLLC
1725 I Street, N.W.
(202) 349-3893
Washington, D.C. 20006
E-mail: armandab@worldnet.att.net

*Counsel for Libyan Government*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE P. FISHER II, )<br>)<br>Plaintiff, )<br>)<br>THE SOCIALIST PEOPLE'S LIBYAN )<br>ARAB JAMAHIRIYA, *ET AL.,* )<br>)<br>Defendants. ) | Civil Case No: 05-2454 (HHK)) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

This memorandum is submitted in support of the Libya's motion to dismiss this suit under Rule 12(b)(1) and (2), F. R. Civ. P., for lack of subject-matter jurisdiction and for lack of constitutional personal jurisdiction under the Foreign Sovereign Immunities Act of 1976, as amended, and in the alternative to dismiss the suit under Rule 12(b)(6), F. R. Civ. P., for failure to state claims against Libya upon which relief can be granted.

## ALLEGATIONS OF FACTS

Plaintiff is the sibling of Charles T. Fisher IV and brings this action against the Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization and Abdel Basset Ali Mohamed al-Meghrahi (hereafter "Meghrahi) for compensatory and punitive damages arising out of the December 21, 1988 explosion of Pan American Flight 103 over Lockerbie, Scotland which was bound for New York from London, England.[1]

---

[1] The instant motion to dismiss is almost identical, with the exception of the identity of the plaintiff, to Libya's motion to dismiss filed before the Court in the matter of Curtis Fisher, *et al.,* v. The Socialist People's Libyan Arab Jamahiriya, Civil Case No. 04-2055 (HHK). This similarity arises from the fact that the plaintiffs' complaints in both matters are almost identical.

**ARGUMENT**

**I.     INTRODUCTION**

The Foreign Sovereign Immunities Act of 1976 ("FSIA") starts with the general rule that foreign states are immune from suit in the United States courts; it also lists the limited circumstances under which a foreign state will be denied immunity and establishes that the Act is the sole basis for asserting jurisdiction over foreign nations in Unites States Courts.  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989). The Supreme Court has held that "a foreign state is presumptively immune from jurisdiction of United States courts, and that unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1604.

In 1996, as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, §221(a), 110 Stat. 1214 (Apr. 24, 1996) (1996 Amendment), Congress amended the FSIA to add a new exception to sovereign immunity where money damages are sought against foreign states that have been designated as state sponsors of terrorism by the Secretary of State.  Suit may be brought under the 1996 Amendment for *personal injury* or *death* caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act.  28 U.S.C. § 1605(a)(7);  *see* Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87 (D.C. Cir. 2002) (hereafter "Price I).

It is has also been established, both by the Supreme Court, as well as almost all Circuit Courts of Appeals within the federal system, that the FSIA provides the **sole** source of subject-

matter jurisdiction in suits against a foreign state. Argentine Republic, 488 U.S. at 434-39. *See* Republic of Austria v. Altman, 541 U.S. 677, 697-700 (2004); Chance v. Taiwan, 86 F.3d 1146 (1st Cir. 1996); Robinson v. Government of Malaysia, 269 F.3d 133, 138 (2d Cir. 2001); Sandoval v. Reno, 166 F.3d 225, 235 (3d Cir. 1999); Velasco v. The Government of Indonesia, 370 F.3d 392, 395 (4th Cir. 2004); In re B-727 Aircraft Serial No. 21010, 272 F.3d 264, 270 (5th Cir. 2001); Keller v. Central Bank of Nigeria, 277 F.3d 811, 820 (6th Cir. 2002); Sampson v. Federal Republic of Germany, 250 F.3d 1145, 1148 (7th Cir. 2001); Flatow v. Islamic Republic of Iran, 308 F.3d 1065, 1069 (9th Cir. 2002); Southway v. Central Bank of Nigeria, 328 F.2d 1267, 1271 (10th Cir. 2003); Alejandre v. Telefoncia Larga Distancia, de Puerto Rico, Inc., 183 F.3d 1277, 1282 (11th Cir. 1999). [2]

Under the FSIA, the foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990)). Once a foreign-sovereign defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims. Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (citing Amerada Hess, 488 U.S. at 434-35).

Libya, pursuant to 50 U.S.C. App. § 2405(j) or 22 U.S.C. § 2371, was formerly designated as a State Sponsor of Terrorism by the Secretary of State in 1979. Designations

---

[2] No case on point was found in the United States Court of Appeals for the Eighth Circuit.

under these statutes are made by the Secretary of State for the purposes of regulating, respectively, exports and foreign aid.  But since the passage of § 1605(a)(7) in 1996, the Secretary's designations also affected foreign sovereign immunity.

On May 12, 2006, however, the President of the United States, through Presidential Determination No. 2006-14, titled as a "Memorandum for the Secretary of State" provided certification for rescission of Libya's designation as a State Sponsor of Terrorism.  A Memorandum of Justification accompanied the President's Declaration which was forwarded to Congress and provided for a review period of 45 days upon the termination of which the Secretary of State could rescind Libya's terrorist designation at the discretion of the Executive.

Libya, on or about June 30, 2006, was subsequently removal from the State Department's list of designated state sponsors of terrorism.

Plaintiff has asserted an array of statutory provisions for the Court's subject-matter and personal jurisdiction over Libya: 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2), 1350 and 2201.  It is unquestionably established, as demonstrated above, by the Supreme Court, our Circuit as well as almost every United States Federal Circuit Court that the FSIA is the sole basis for a court's subject-matter jurisdiction over a foreign sovereign state.  Argentine Republic, 488 U.S. at 434-39.  The Court should simply ignore any and all plaintiff's' assertions of subject-matter jurisdiction which are not a part of the FSIA.

## II.    LIBYA'S REMOVAL FROM STATE DEPARTMENT LIST

The Supreme Court previously has upheld the existence of federal court jurisdiction when jurisdiction depended on a factual determination that had been delegated to the Department

of State.  *See* Jones v. United States, 137 U.S. 202 (1890).   The Second Circuit also has denied jurisdiction on the basis of an analogous finding by the executive branch. See Matimak Trading Co. v. Khalily, 118 F.3d 76 (2d Cir.1997), *cert. denied* 522 U.S. 1091(1998).

The Supreme Court case above occurred more than a century ago due to the federal indictment of an individual for murder on the Caribbean island of Navassa.  *See* Jones, 137 U.S. at 216.  Jurisdiction to try the individual in an American court depended on the island's status as American territory.   The Secretary of State had then deemed Navassa as an area "appertaining to the United States."  *Id*. at 217.   He had made that announcement pursuant to the Guano Islands Act of 1856, § 1.  The Act empowered the President to declare Caribbean guano islands American. See *id*. at 209.   The Supreme Court held that such a declaration could be made "through the Department of State, whose acts in this regard are in legal contemplation the acts of the president."  *Id*. at 217.   The Court went on to hold that the Secretary's statement did in fact make the island one "appertaining to the United States" and that jurisdiction over Jones's crime was therefore proper.  *Id*. at 224.

The Supreme Court has also extensively considered the issue of federal court jurisdiction. The Supreme Court, in relevant part, held:

> Congress may exert its power . . . by imposing judicial function of adjudicating justiciable controversies on the regular federal courts which under the Constitution it has the power to ordain and establish and which I may invest with jurisdiction and from which it may withhold jurisdiction in exact degrees and character which to Congress may seem proper for the public good. (Emphasis added, internal citations and quotes omitted).

National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., Inc., 337 U.S. 582, 600 (1949).  The Supreme Court has also specifically addressed the issue of withdrawal of

jurisdiction of federal courts and the effect of such withdrawal or repeal on pending actions. The Court, in Bruner v. United States, 343 U.S. 112, 116-117 (1952), in relevant part, held:

> Jurisdiction in such cases was conferred by an act of Congress, and when that Act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as jurisdiction depended entirely upon the act of Congress . . This rule-that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law-has been adhered to consistently by this Court.

Id. In the instant case Congress has delegated the authority of designating foreign states as state sponsors of terrorism, which affects sovereign immunity of that foreign state, to the Executive Branch of the Government. The Executive Branch rescinded Libya's designation. Presidential Determination No. 2006-14 of May 12, 2006 contains no reservation of jurisdiction for pending cases.[3]

Consequently, due to unconditional restoration of Libya's sovereign immunity, the Court lacks subject-matter jurisdiction to decide the case. The Court should dismiss this action in its entirety against as Libya.

### III.  COURT LACKS PERSONAL JURISDICTION OVER LIBYA

Libya is fully cognizant that the issue of the constitutionality of personal jurisdiction over the state has been decided adversely by this Court in Price I; to preserve the issue for potential

---

[3] Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123 (D.C. Cir. 2004) denied Libya's motion to dismiss on the same grounds. The Court of Appeals, by way of summary affirmance, denied Libya's appeal in the Kilburn Matter. Kilburn v. Islamic Republic of Iran, et al, Docket No. 06-7127 (D.C. Cir. 2006). That case is, however, distinguishable from the instant case as the Court in Kilburn had, prior to Libya's removal from the list of state sponsors of terrorism and its full restoration of foreign sovereign immunity, made a determination of its own competence and had held that it could exercise subject-matter jurisdiction over the case.

further review, the matter is respectfully raised once again in this instant case as the holding in Price I may now be in question due to the language in Republic of Austria v. Altman, 541 U.S. 677, 713 (2004), which held:

> For one thing, statutes of limitations, **personal jurisdiction** and venue requirements, and the doctrine of *forum non conveniens* will limit the number of suits brought in American Courts.

Id. (emphasis added).

IV.   **PUNITIVE DAMAGES NOT AVAILABLE**

28 U.S.C. § 1606, in relevant part, states that "a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages". Consequently plaintiff's claim for punitive damages should be dismissed pursuant to the clear prohibition enunciated in the FSIA. Libya asserts that the Libyan External Security Organization is not an agency of the Libyan government but it is a department within the Libyan Government. Any questions regarding the status the Libyan External Security Organization can be resolved in reliance on this Circuit's adopted categorical approach in determining whether any named defendant is an agency or instrumentality of a foreign state or whether it is a political subdivision of the foreign state. In Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 149-53 (D.C. Cir. 1994) this Circuit Court held that "Any government of reasonable complexity must act through men organized into offices and departments." *Id.* at 153. The Court adopted the following approach: if the core functions of the entity is governmental, it is considered the foreign state itself; if commercial, the entity is an agency of instrumentality of the foreign state. *Id.* This categorical approach was again confirmed most recently in Roeder v. Islamic Republic of Iran, 333 F.3d

7

228, 234 (D.C. Cir. 2003).

There can be no doubt that the external security apparatus of Libya is not commercial in nature and that it performs purely governmental activities related to the security of the sovereign state of Libya (as conceded by plaintiff's' complaint). The categorical approach in this Circuit clearly proves that the above named defendant is not an agency or instrumentality of Libya as asserted by plaintiff but a department within the Government. Libya also attaches for the Court's review an opinion (English translation and original Arabic) by the Head of Legal Affairs Department, Justice and State Security General Popular Committee of the Libyan Government regarding the status of the Libyan External Security Organization within the government of Libya (Exhibit A, parts 1 and 2).

The opinion, based on Libyan law, clearly demonstrates that the Jamahiriya Security Organization is a department within the Libyan Government and does not have a distinct and separate legal identity.

Section 1606 provides that Libya and the Jamahiriya Security Organization may not be held liable for punitive damages. Thus the Court should dismiss plaintiff's unsustainable request for punitive damages as both Libya and the Jamahiriya Security Organization enjoy full sovereign immunity from punitive damages.

### V.    FAILURE TO STATE A CAUSE OF ACTION

*A.    FLATOW AMENDMENT DOES NOT CREATE A CAUSE OF ACTION*

The Civil Liability for Acts of State Sponsored Terrorism, Pub.L. No. 104-208, Div. A, Title I, § 101© [Title V, §589], Sept 30, 1996, 110 Stat. 3009-172, reproduced as a **note** to 28

U.S.C. § 1605(a)(7) (incorrectly referred to as the "Flatow Amendment" rather than the "Flatow Act"), reads, in relevant part, as follows:

> **(a)** An official, employee, or agent of a foreign state designated as state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 [section 2405(j) of the Appendix to Title 50, War and National Defense] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States maintain jurisdiction under section 1605(a)(7) of title 28 United States Code [subsec. (a)(7) of this section] for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7) [subsec. (a)(7) of this section]."

This District of Columbia Circuit Court, in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1033 (D.C. Cir. 2004) conclusively held that the Flatow Act and the 1996 Amendment to the FSIA (§ 1605(a)(7)) did not create a private cause of action against a foreign government. The Court, in relevant part, held:

> We now hold that neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government. Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it, and the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself.

Id. It should also be noted that Cicippio also specifically abrogates a number of district court decisions. Cicippio, in relevant part, held:

> . . . . some district court opinions in this circuit have held or assumed that the Flatow Amendment creates a cause of action against foreign states. *See Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 231 (D.D.C. 2002) (holding that the Flatow Amendment provides a cause of action against a foreign state). *See also Regier v. Islamic Republic of Iran*, 281 F. Supp. 2d 87, 98-99 (D.D.C. 2003) (adopting

9

> *Cronin*'s reasoning that there is a cause of action against foreign states under the Flatow Amendment); *Kilburn v. Islamic Republic of Iran*, 277 F. Supp. 2d 24, 36-37 (D.D.C. 2003) (same).

*Id*. Cicippio also further held:

> Subsequent enactments by Congress providing for the payment or enforcement of judgments entered against foreign states in cases brought under § 1605(a)(7) fail to establish that Congress created a cause of action against foreign states. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub.L. No. 106-386, § 2002, 114 Stat. 1464, 1541-43; Terrorism Risk Insurance Act of 2002, Pub.L. No. 107-297, § 201, 116 Stat. 2322, 2337-39. As we explained in *Roeder,* these statutes merely provide for payment "*if* an individual has a judgment against Iran," but they do not address or resolve the anterior question "whether plaintiffs are legally entitled to such a judgment." 333 F.3d at 239 (emphasis added). It is entirely plausible for Congress to direct the United States to compensate victims of terrorism without purporting to establish or support a cause of action against foreign state sponsors of terrorism.

*Id*. at 1035.

The language of the Flatow Act is also clear in that it only creates a cause of action against "An official, employee, or agent of a foreign state . . . while acting within the scope of his or her office, employment, or agency ". 28 U.S.C. § 1605(a)(7) note. The act is clearly limited to individuals in their individual capacity. This position has also been confirm by the D.C. Circuit. The Court in Cicippio limited the causes of action which are created by the Flatow Act. The Court held:

> We also agree with the United States that, insofar as the Flatow Amendment creates a private right of action against officials, employees, and agents of foreign states, the cause of action is limited to claims against those officials in their *individual,* as opposed to their official, capacities.

*Id.*, at 1034.

The D.C. Circuit has also further stated, "it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states." <u>Id</u>., at 1036. In situations where "Congress has not expressly recognized" a cause of action against foreign states, courts should "decline to imply" one. <u>Id</u>.  Accordingly, the Flatow Act does not create a private federal cause of action against Libya or the Jamahiriya Security Organization.

B.     GENERIC COMMON LAW CLAIMS DO NOT CREATE
       A PRIVATE CAUSE OF ACTION AGAINST LIBYA

Simply reciting generic common law causes of action in the complaint is unquestionably insufficience.

The Court of Appeals, in <u>Acree v. Republic of Iraq</u>, 370 F.3d 41, 59 (D.C. Cir. 2004) specifically held that generic common law cannot be the source of a federal cause of action. The Court, in relevant part, held:

> [G]eneric common law cannot be the *source* of a federal cause of action. The shared common law of the states may afford useful guidance as to the rules of decision in a FSIA case where a cause of action arises from some specific and concrete source of law. *See Bettis*, 315 F.3d at 333 (assuming, *arguendo,* that plaintiffs stated a cause of action under the Flatow Amendment and then turning to generic common law to flesh out the controlling substantive law). But there is no support for the proposition that generic common law itself may furnish the cause of action. Rather, as in any case, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law. (Emphasis added).

In <u>Bettis v. Islamic Republic of Iran</u>, 315 F.3d 325, 332 (D.C. Cir. 2003) the Court of Appeals also held that most Flatow Amendment cases have applied federal common law but then goes on to hold that the term is incorrect. <u>Bettis</u>, in relevant part, held:

> [F]ederal common law' seems . . . to be a misnomer. Indeed, it is a

>mistake, we think, to label actions under the FSIA and the Flatow
>Amendment cases arising under the FSIA . . . . as 'federal common
>law cases as these actions are based on *statutory* rights. Without the
>statute, the claims could not arise.

*Id.* at 332. (Emphasis added). Plaintiff asserts vague causes of action pursuant to the generic "applicable federal, state, foreign statutory and/or common law" without ever identifying with specificity the source of that cause of action. The holding in Bettis has already decided that plaintiff may not rely on federal common law to assert causes of action against Libya.[4] The Court should dismiss plaintiff's causes of action for failure to state a claim upon which relief can be granted.

C.    *FAILURE TO ADEQUATELY PLEAD STATE LAW CAUSES OF ACTION*

Plaintiff's reliance on the generic "applicable federal, state, foreign statutory and/or common law" without ever identifying a particular state as the basis for their causes of action also mandates dismissal for failure to state a claim upon which relief can be granted. The issue has received extensive and exhaustive review by sister district courts and can be best

---

[4] The issue of whether state common law is available to claimants as a private cause of action in a federal action against foreign states has not specifically been decided by this Circuit. Although it is true that in Cicippio-Puleo the Court allowed the case to be remanded to the lower court, the Court also held:

>In remanding, we do not mean to suggest, one way or the other, whether plaintiffs have a viable cause of action. The possibility that an alternative source of law might support such a claim was addressed only by *amici*, and we do not ordinarily decide issues not raised by the parties. Accordingly, we will leave it to the District Court in the first instance to address any amended complaint that is offered by plaintiffs. Accordingly, we will leave it to the District Court in the first instance to address any amended complaint that is offered by plaintiffs.

summarized by the Memorandum Opinion of the Honorable Judge Henry H. Kennedy, Jr.,

United States District Judge for the District of Columbia in the matter of <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>, Civil Case No. 02-2026 (May 12, 2006). The Memorandum Opinion, in dealing with an almost identical assertion by the plaintiffs in that case, in relevant part, held:

> While plaintiffs may properly state a claim against defendants under state law, the court nonetheless denies plaintiffs' motion for partial summary judgment. Plaintiffs' motion seeks partial summary judgment as to liability alone. As plaintiffs note, "the starting point for such an analysis is the District of Columbia's choice of law principles." However, plaintiffs argue that the court "need not, in the first instance, engage in a state-by-state analysis of the various causes of action, as asserted by each plaintiff" because the claims asserted—wrongful death and intentional infliction of emotional distress—are "fairly uniform in every state." Rather, plaintiffs argue that "[i]t is enough at this stage for the Court to conclude—as it must—that the undisputed material facts establish the Defendants' liability."
> 
> Essentially, plaintiffs ask the court to ignore the choice-of-law analysis necessary to determine which state's law applies and hold that defendants would be liable under *every* state's law. The court declines this invitation, as it was foreclosed by the D.C. Circuit's opinion in *Acree*. In *Acree,* the D.C. Circuit rejected the plaintiffs' claims that the "traditional torts of assault, battery and intentional infliction of emotional distress in their generic form" were sufficient to impose liability on defendants. 370 F.3d at 59. Rather, the court required plaintiffs to "identify a particular cause of action arising under a specific source of law." *Id.* Plaintiffs failed to do so in their submissions to the court.
> 
> Moreover, the D.C. Circuit, in *Cicippio-Puleo* and *Acree*, suggested that a plaintiff cannot rely on their submissions to identify that "particular cause of action," but rather must do so *in their complaint*. In *Cicippio-Puleo*, the D.C. Circuit, after rejecting the plaintiffs' use of the Flatow Amendment as a cause of action against the foreign state, remanded the case "to allow plaintiffs an opportunity to *amend their complaint* to state a cause of action under some other source of law," including state law. 353 F.3d at 1027 (emphasis added). Several months later, the D.C. Circuit reviewed a complaint in a similar case that, like plaintiffs here,

13

> asserted tort claims "in their generic form." *Acree*, 370 F.3d at 59. At oral argument, the court pressed the plaintiffs to identify the source of law upon which their claims were based. Counsel reiterated their reliance on "generic common law torts." *Id.* Having failed to identify a particular cause of action, the D.C. Circuit dismissed the case, stating that it found "no cause to remand this case to the District Court in order to allow appellees to *amend their complaint* to state a cause of action under some other source of law." *Id.* at 59–60 (emphasis added).
>
> Based on these cases, some district courts in this jurisdiction have held that a plaintiff in a FSIA case is required to identify, in their complaint, their state law claims with particularity. *See Dammarell*, 2005 U.S. Dist. LEXIS 5343, at *4–5; *Welch v. Islamic Republic of Iran*, 2004 U.S. Dist. LEXIS 19512, at *13–16 (D.D.C. Sept. 27, 2004). These cases have allowed the plaintiffs to amend their complaint to accomplish such a result. Here, plaintiffs' complaint alleges nothing more than the "generic common law torts" of wrongful death and intentional infliction of emotional distress. Based on the language in *Acree* and Cicippio-Puleo that suggests that a FSIA complaint must allege more in order to survive a motion to dismiss, the court concludes that plaintiffs must amend their complaint if they wish to proceed.

*Id*. at 28-30. The above referenced opinion by the Court is well reasoned and follows binding precedent on an identical issue from the District of Columbia Court of Appeals.

The Court should dismiss plaintiff's causes of action for failure to state a claim upon which relief can be granted.

D.   TVPA DOES NOT PROVIDE A CAUSE OF
     ACTION AGAINST LIBYA

Plaintiff has also asserted a cause of action pursuant to the "Torture Victim Protection Act". Torture Victim Protection Act of 1991, reproduced as a note to 28 U.S.C. § 1350, in relevant part, reads as follows:

14

> **Section 1.    Short Title.**
> This Act may be cited as the "torture Victim Protection Act of 1991".
> **Sec. 2.    Establishment of Civil Action.**
> **(a) Liability.–** An individual who, under actual or apparent authority, or color of law, of any foreign nation –
> **(1)** subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
> **(2)** subjects and individual to extrajudicial killing shall, in a civil action, be liable for damages to the individuals legal representative, or to any person who r
>
> **(b) Exhaustion of remedies.–** A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.
>
> **(c) Statute of limitations.–** No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose.

28 U.S.C. § 1350, note.

Libya, for the second time in this opposition, is forced to possibly bore the Court by restating its own previous well reasoned opinion here.

The Court has only recently rejected an identical argument in the matter of <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>, Civil Case No. 02-2026 (May 12, 2006). The opinion, in relevant part, states:

> Plaintiffs also seek to impose liability against Libya and LESO under the Flatow Amendment and the TVPA. These statutes are "not statutes of general application" and instead, by "their very terms, confine their scope to officials or agents of foreign states." *Dammarell v. Islamic Republic of Iran*, 2005 U.S. Dist. LEXIS 5343, *93 (D.D.C. Mar. 29, 2005). Defendants, therefore, move for summary judgment in their favor on plaintiffs' claims against Libya and LESO under both the Flatow Amendment and the TVPA.
>
> Despite the fact that the texts of these two statutes do not directly create of action against the government defendants, plaintiffs nonetheless argue that they can be held liable indirectly, by way of section 1606 of FSIA. As noted above, section 1606 states that, as to any claim for relief with respect to which a foreign

state is not entitled to immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Plaintiffs' theory of liability is that Libya and LESO should be held liable under the Flatow Amendment and the TVPA because both statutes "set forth a cause of action and specific damage remedies against private individuals." Pls.' Mot. at 22–23. Therefore, plaintiffs argue, "§ 1606 instructs, and indeed requires, that such rights of action and remedies likewise be available against the non-immune foreign state." *Id.* This court disagrees.

       To reiterate, the Flatow Amendment creates a specific cause of action against an "official, employee, or agent of a foreign state" for acts over which the court may maintain jurisdiction under the state-sponsored terrorism exception to sovereign immunity. 28 U.S.C. § 1605 note. Two judges in this jurisdiction have explicitly held that the Flatow Amendment should not be expanded to apply to foreign states through application of section 1606. The first, and most extensive, discussion of this issue was provided by Judge Bates in *Dammarell v. Islamic Republic of Iran*. Judge Bates presented four reasons why "the cause of action in the Flatow Amendment cannot be read to apply to foreign states through section 1606": (1) the text of the Flatow Amendment applies only to officials, employees, or agents of a foreign state, not a foreign state itself; (2) the legislative history does not contain any indication that Congress nonetheless intended to create a private cause of action against a foreign state; (3) the statute does not "obviously extend to *private individuals* within the meaning of section 1606," 2005 U.S. Dist. LEXIS 5343*,* at *97–98 (emphasis added); and (4) such a holding would be "in at least some tension with *Cicippio-Puleo*," *id.* at 97. Last October, Judge Kollar-Kotelly adopted the rationale laid out by Judge Bates in *Dammarell* and similarly rejected the argument that the Flatow Amendment can be read to apply to foreign states through section 1606. *Holland*, 2005 U.S. Dist. LEXIS 40254, at *41–44.

       The court agrees with the reasoned decisions of Judge Bates and Judge Kollar-Kotelly and likewise concludes that Congress did not intend to create a cause of action under the Flatow Amendment against foreign states (or its instrumentalities or agents acting in their official capacities) through section 1606 of FSIA. As the D.C. Circuit has stated, "it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states." *Cicippio-Puleo*, 353 F.3d at 1036. In situations where "Congress has not expressly recognized" a cause of action against foreign states, courts should "decline to imply" one. *Id.* Accordingly, the court dismisses plaintiffs' claims against the government defendants under the Flatow Amendment.

       The court also rejects plaintiffs' assertion that section 1606 of FSIA may also be used to expand the terms of the TVPA. As with the Flatow Amendment, the terms of the TVPA make clear that its applicability is limited to suits against individuals, not foreign states. *See* 28 U.S.C. § 1350 note. Moreover, the legislative history of the TVPA demonstrates that Congress did not intend for it to be used to hold foreign

states and their instrumentalities liable. First, the Senate Report states unequivocally that the legislation's use of the term "individual" was intentional and was meant "to make crystal clear that foreign states or their entities cannot be sued under this bill

> *under any circumstances*; only individuals may be sued." S. Rep. No. 102-249, at 7 (1991) (emphasis added). The House Report contains language of similar effect. H.R. Rep. No. 102-367, at 87 (1992) ("Only 'individuals,' not foreign states, can be sued under the [TVPA].").

> Plaintiffs attempt to circumvent the text of the TVPA and its strong legislative history by arguing that, by virtue of the "plain words" of section 1606, "the cause of action reflected statutorily in the TVPA . . . must be available against Libya here." Pls.' Mot. at 19–20. Judge Bates, in *Dammarell*, rejected a similar argument, stating that:

>> Congress's plain intent in enacting the TVPA—as reflected in the text (which specifies only individuals) and the legislative history (which could not be clearer)—was to confine liability for acts of torture and extrajudicial killing to private individuals. To overcome this strong evidence of intent, the Court would require something more than the textual gymnastics of reading a 1996 statute (section 1605(a)(7)) as operating through a 1976 statute (section 1606) to expand a 1992 cause of action (the TVPA) to the states. Therefore, the Court concludes in this instance that Congress's clearly expressed intent in 1992 should prevail over any speculative intent to the contrary in 1996.

> *Dammarell*, 2005 U.S. Dist. LEXIS 5343, at *100–01. Judge Kollar-Kotelly adopted this holding as well in *Holland*. 2005 U.S. Dist. LEXIS 40254, at *35–47.

> Again, the court agrees with Judge Bates's and Judge Kollar-Kotelly's rationale and holds that the TVPA cannot be used to hold the government defendants liable for the torture or extrajudicial killings of individuals under its authority. Any contrary holding would "produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." *Griffin v. Oceanic Contractors*, 458 U.S. 564, 571 (1982). Accordingly, the court dismisses plaintiffs' claims against Libya and LESO under the TVPA.

*Id*.  Plaintiff's claim under the TVPA can also be dismissed under the subsections (b) and (c) as

plaintiff has not attempted to exhaust all remedies and the ten year statute of limitation for

asserting claims under the TVPA have also long expired.

17

**VI.     LIBYAN GUARANTY**

At the time of this filing there are no judgements pending against defendant Meghrahi. Libya reserves the right to raise defenses on this issue if and when the issue is ripe.

Plaintiff has also asserted (only in the title line) that Libya is liable under the doctrine of *respondeat superior* for the acts of its agent. (Plt. Comp. at 18). Plaintiff fails to cite any cases on point on this issue from the District of Columbia Circuit. It is unclear whether this is a cause of action it is not asserted in such a fashion. The Court should simply dismiss this assertion.

## CONCLUSION

For the foregoing reasons, the Court should grant Libya's motion under Rule 12(b)(1) and (2), F. R. Civ. P., and dismiss this action for lack of subject-matter and constitutional personal jurisdiction over the defendants and, in the alternative, grant Libya's motion under Rule 12(b)(6), F.R.Civ.P., and dismiss the complaint for failure to state claims upon which relief can be granted. A proposed order is attached hereto.

Dated:       January 19, 2007                               Respectfully submitted,


                                                                                                //s//
Arman Dabiri
Law Offices of Arman Dabiri
    & Associates, P.L.L.C.
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
Tel. (202) 349-3893
E-mail: armandab@worldnet.att.net

*Counsel for Libyan Government*