IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **LAWRENCE P. FISHER, II** | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : |
| **GREAT SOCIALIST PEOPLE'S** | :    CIVIL CASE NO. 05-2454 (HHK) |
| **LIBYAN ARAB JAMAHIRIYA, et al.** | : |
| **309-315 East 48th Street** | : |
| **New York, New York 10017** | : |
| | : |
| **Defendant.** | : |

_____

**Rule 12(b) Motion to Dismiss of Defendant Al-Megrahi because of Plaintiffs' Lack of Standing and Capacity to Sue, for Failure to Serve within the Statutory Period and Because of Lack of Justiciability and Rule 12 (h) Motion to Dismiss for Failure to State a Claim based on the Statute of Limitations**

Defendant Al-Megrahi respectfully moves the Court to dismiss Plaintiffs' Complaint since these wrongful death actions may only be brought by the Personal Representative of the decedent, who in fact brought such action which was settled with the defendants for Ten Million Dollars, and because of the Statute of Limitations.

_____/s/_____
Dante Mattioni, Esquire

…
…

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Rule 12(b) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. (1) lack of jurisdiction over the subject matter...

A challenge to the standing of a party, when raised as a motion to dismiss, proceeds pursuant to Rule 12(b)(1). Steffan v. Cheney, 733 F. Supp. 115 (Gasch, J.) (Stating that a motion to dismiss for lack of standing can only be brought under FRCP 12(b)(1).

The plaintiff bears the burden of establishing that the court has subject matter jurisdiction Rasul v. Bush 215 F.Supp.2d.55, 61 (D.D.C. 2002).

Because subject matter jurisdiction focuses on the Court's power to hear the plaintiff's claim, a court resolving a motion to dismiss under Rule 12(b)(1) must give the complaint's factual allegation closer scrutiny than required for a motion to dismiss pursuant to rule 12(b)(6) for failure to state a claim. FOP v. Ashcroft 185 F.Supp.2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. Hohri v. United States 782 F.2d. 227, 241 (D.C. 1986). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. Herbert v. National Academy of Sciences 974 F.2d. 192, 197 (D.C. Cir. 1992).

### STATEMENT OF THE CASE

In 2005, Plaintiff filed the present action in the District Court for the District of Columbia.

The complaint concerns the passenger Charles T. Fisher, IV who died in the Lockerbie

-1-

crash of Pan Am 103. Plaintiffs are three of his children.

The Personal Representative of the decedent entered into a global settlement with the defendants. The present plaintiffs elected not to intervene in the action instituted by the Personal Representative against the present defendants which was settled.

The decedent resided in New York State (Complaint, Sect. 14). Barbara Liberman was appointed Administrator of his estate.

Plaintiffs allege in their Complaint that: 8) defendant Al-Megrahi who was released by the Personal Representative of Charles T. Fisher, IV is a citizen of Libya and an intelligence agent or official and employee of Libya, the JSO and LAA; 39) On or about December 21, 1988, Defendant, Al-Megrahi, while acting within the scope of his authority as an agent and official of the JSO and the Libyan government, set an MST-13 digital timer of a Semtebomb and placed the shell of a Toshiba tape recorder containing the Semtebomb into a brown Samsonite suitcase; 40) The Samsonite suitcase containing the Semtebomb was placed by Defendant Al-Megrahi, or at his instruction, on board Air Malta Flight KM 180, which was to leave for Frankfurt, Germany from Luqa Airport, Malta at 9:15, GMT on December 21, 1988; 46) (the bag having been somewhat transferred at Frankfurt and sent to Heathrow, and then placed aboard Pan Am 103 by means of a stolen tag clearing it through to the United States through Frankfurt and London), at about 19:03 GMT, only 38 minutes after take-off, at an altitude of approximately 31,000 feet, the Semtebomb exploded; 55) Defendant Al-Megrahi conducted himself in committing these acts pursuant to the authority granted him by the JSO. All actions were also conducted within the scope of his duties as an agent of the JSO and Libya; 87) in bombing Pan Am Flight 103, Al-Megrahi was acting under actual and apparent authority of Libya and the JSO and conspired with

other co-terrorists and acted among themselves as officials of Libya and the JSO and within the scope of their agency and authority as Libyan and JSO officials; 99) Al-Megrahi acted within the scope of his employment as an official, employee and agent of Libya and the JSO.

## **JURISDICTION**

It is denied that there is jurisdiction under 28 USC 1331 since state law governs FSIA actions, 28 USC 1606.

It is denied that there is jurisdiction under 28 USC 1350 and 2333(a) since this is not an action under the Torture Victim Protection Act of 1991.

1. THE PLAINTIFF OBJECTOR HAS NO STANDING TO BRING HIS INDIVIDUAL CLAIMS NOR IS HE A STATUTORY BENEFICIARY ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS. ACCORDINGLY, THIS ACTION SHOULD BE DISMISSED.

Under New York law, the personal representative alone is empowered to bring a wrongful death action, McKinney's Statutes of New York, EPTL 5-4.1(1).

It appears that Plaintiff Objector was not an eligible distributee under the interstate law or mentioned in decedent's Will if such existed. Otherwise, the "Objector" would not be bringing separate action.

In light of the foregoing, there is no legitimate legal basis for the claims alleged by the Fisher Objector/Plaintiff.

B.   FLATOW AMENDMENT

Additionally, the Flatow Amendment upon which the Objector relies expressly states that only the personal representative is entitled to bring the action.

Pub. L. 104-208 DIV. A. Title I, Section 101(c) [Title V, Section 589], Sept. 30, 196, 110 Stat. 3009-172 provides:

> (a) An official, employee, or agent of a foreign state designated as a state sponsor or terrorism...while acting within the scope of his or her office, employment, or agency shall be liable to a United States national <u>or the national's legal representative</u> for personal injury or death caused by acts of that official, employer, or agent for which the courts of the United States may maintain jurisdiction under Section 1605(a)(7) of Title 28, United States Code for money damages which may include economic damages, solatium, pain and suffering and punitive damages if the acts were among those described in Section 1605(a)(7).

It vests no right of direct action in the relatives for personal solatium or grief if the victim is not immediately killed but instead taken hostage. The direct action is only to the victim. If he dies, then there accrues the normal derivative wrongful death action which is to be brought by the national's legal representative.

The Legislative History of the Comprehensive Antiterrorism Act of 1995, P.L. 104-132 confirms this interpretation, stating: "It is expected that a lawsuit proceeding under this section will be brought either by the victim himself, or by his estate in the case of death or mental incapacity." <u>See</u>, H.R. Rep., 104-383, p. 105.

The language of the Flatow Amendment authorizes either a personal injury suit by the person directly harmed or a death suit by the decedent's legal representative. The language contemplates only <u>one</u> death suit brought by the legal representative and expresses no intent to displace the long established rule, followed in the majority of state and federal laws, that only the estate representative may bring a death suit.

Clearly the Complaint is directed against Defendant Al-Megrahi as an agent of Libya acting within his official capacity.[1] (Paragraphs 8, 39, 55, 87, 99 supra).

---

[1]Furthermore, it may be noted there is no respondent superior against the sovereign under the Flatow Amendment or under the TVPA <u>Collett v. Libya</u> 362 F. Supp. 2d. 230, 242 (D.D.C. 2005). The Court of Appeals in <u>Cicippio-Puleo v. Iran</u>, 353 F.3d. 1024 (D.C. Cir. 2004) held that "the Flatow Amendment creates a private right of action against officials, employees and agents of foreign state...in their individual, as opposed to their official capacities. 353 F.3d at 1034." The

C.    TVPA ACT

With respect to the TVPA it provides (28 USC 1350 Note)[2].

Cicippio court noted:

> As the Supreme Court repeatedly has explained, an official capacity claim against a governmental official is in substance a claim against the government itself. See, e.g., Kentucky v. Graham 473 US 159, 165 (1985)...By definition, a damage judgment in an official capacity suit is enforceable against the state itself (and only against the state). See Graham, 473 U.S. at 166...; see also Fed.R. Civ.P. 25(d)...Thus, to construe the Flatow Amendment as permitting official capacity claims would eviscerate the recognized distinction between suits against governments and suits against individual government officials...The text of the Flatow Amendment and Section 1605(a)(7), as well as all relevant background interpretative principles...foreclose any such construction.
>
> There is nothing anomalous in Congress' approach in enacting the Flatow Amendment. As we noted in Price, the passage of Section 1605(a)(7) involved a delicate legislative compromise. While Congress sought to create a judicial forum for the compensation of victims and the punishment of terrorist states, it proceeded with caution in part due to executive branch officials' concern that other nations would respond by subjecting the American government to suits in foreign countries. See Price, 294 F.3d at 89.

Courts generally have recognized that immunity under the FSIA extends also to agents of a foreign state acting in their official capacities since a suit against an individual acting in his office capacity is the practical equivalent of a suit against the sovereign directly El Fadi v. Central Bank of Jordan, 75 F.3d 658, 671 (D.C. Cir. 196)(dismissing claims against government officials since they were sued in their official capacities); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 11 n3 (D.D.C. 1998)(noting favorable practice of applying FSIA to individuals); In Re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 788 (SDNY 2005)(collecting cases)(dismissing claims against Prince Sultan and Prince Turki).

It would be necessary to allege that Megrahi acted ultra vires. Doe v. State of Israel 400 F.Supp. 2d. 86, 105 (D.D.C. 2005):

> The suits against the individual Israeli defendants in their personal capacities are actually nothing more than redundant suits against Israel. The failure to sufficiently allege ultra vires action on the part of the individual Israeli defendants means that those defendants remain within the FSIA's protective umbrella unless a specific exemption applies.

---

[2] As to the count under the torture Victim Protection Act of 1991, 28 USC 1350, there is no indication that it was intended to create a retroactive cause of action for an event that occurred in 1998. Further, Plaintiffs failed to plead that they had exhausted adequate and available

    A.    Liability. An individual who, under actual or apparent authority, or color of law, of any foreign nation.

        (1)    subjects an individual to torture shall, in a civil action, be liable for damages to that individual, or

        (2)    subjects an individual to extrajudicial killing, in a civil action, be liable for damages <u>to the individual's legal representative</u>, or to any person who may be claimant in an action for wrongful death.

    B.    Exhaustion of Remedies. A court shall decline to hear a claim under the section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.

Once again, it is only the legal representative who could bring a claim.

It is clear that in all the relevant jurisdictions and Acts only the authorized estate representative may bring the wrongful death action as occurred and was settled releasing all the present defendants. Additionally, no action may lie under the Flatow Amendment with respect to the decedent if he was not a national; at certain places on the internet he is listed as from London, England.

    C.    Objector's Count for Emotional Distress

In any event, the objector's hypothetical claims would have to be dismissed. The claim for direct emotional distress will not stand since the relative of decedent was not a bystander to his death <u>Boysun v. Sanperi</u> 61 N.Y. 2d. 219 (1984).

---

remedies against Mr. Al-Megrahi in Malta, Germany or England where the conduct giving rise to the claim allegedly occurred. It seems merely to give a cause of action for wrongful death if not available in the foreign jurisdiction where the conduct occurred.

Further, the TVPA is not itself a jurisdictional statute. Plaintiff must first establish jurisdiction under another statute or invoke federal question jurisdiction under 28 USC 1331 <u>Sarci v. Tinto</u> 221 F.Supp. 2d. 1116, 1123 (C.D.Ca. 2002).

2.    PURSUANT TO 28 USC 1606, "THE FOREIGN STATE SHALL BE LIABLE IN THE SAME MANNER AND TO THE SAME EXTENT AS A PRIVATE INDIVIDUAL UNDER LIKE CIRCUMSTANCES." ACCORDINGLY, THE WRONGFUL DEATH ACT SCHEDULE OF BENEFICIARIES OF THE STATE OF DECEDENT'S DOMICILE GOVERNS. LIKEWISE, ARTICLE 24 OF THE WARSAW CONVENTION PROVIDES THAT DOMESTIC LAW DETERMINES "THE PERSONS WHO HAVE THE RIGHT TO BRING SUIT."

The objector has intimated by filing the present Complaint that they have no cause of action under the wrongful death statute of New York. Thus, the question arises, did the Flatow Amendment inserted at the last moment into the Omnibus Consolidated Appropriations Act of 197 on September 30, 1996 evidence intention to repeal 28 USC 1606 which provides that "The Foreign State shall be liable in the same manner and to the same extent as a private individual under like circumstances." Clearly, in a suit between private parties, the eligible beneficiaries would be determined by the New York Wrongful Death Act.

It is clear, from its rapid and unexplained insertion into the Consolidated Appropriations Act of 1997, that Congress did not draft the Flatow Amendment as a comprehensive wrongful death act scheme. The Amendment does not address the issue of eligible beneficiaries. Nor does the scant legislative history indicate that Congress considered the issue.

The only legislative history is the following statement from a House conference report:

> The conference agreement inserts language expanding the scope of monetary damage awards available to American victims of international terrorism.
>
> The conferences intend that this section shall apply to cases pending upon enactment of this Act. H.R. Conf. Rep. 863, 104th Cong., 1996.

It is important to note that the FSIA itself advises that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 USC 1606. Accordingly, the FSIA directs the application of governing state law, including state

choice of law rules to those issues not directly addressed in the statute. Brink's Ltd. v. South African Airways 93 F.3d 1022, 1030 (2nd Cir. 1996)("the Convention merely acts as a 'pass-through,' directing courts to apply the law that would govern in the absence of the Warsaw Convention...Thus, we 'pass-through' the Warsaw Convention to the United States law and under the FSIA to state law for the rule of liability governing this dispute.")

The language of the Flatow Amendment does not contemplate a myriad of actions, but <u>one</u> death suit by the legal representative. It expresses no intent to displace long established state law on standing to bring a death suit.

Had Congress intended to permit non-statutory beneficiaries to bring their own individual suits, it would have expressly indicated this. Instead, Congress said that the "official, employee, or agent of a foreign state...shall be liable to a United States national or the national's <u>legal representative</u>." 28 USC 1605. Note, it so stipulating, the Flatow Amendment is consistent will all the federal death acts: the Death on the High Seas Act, 46 USC 761; the Jones Act, 46 USC 688, the Longshoremen Harbor Workers Compensation Act, 43 USC 905; and the Federal Employees Liability Act, 45 USC 51 which allow only the legal representative to bring suit.

In short, "There is no federal general common law." <u>Erie R. Co. v. Thompkins</u> 304 U.S. 64, 78 (1938)(rejecting the concept of a federal common law lurking as a brooding omnipresence in the sky); <u>Salve Regina College v. Russell</u> 499 U.S. 225, 226 (1991). To grant certain ad hoc non-statutory beneficiaries recovery would be inconsistent with the Supreme Court's admonition on <u>O'Melveny & Meyers v. FDIC</u> 512 US 79, 88-89 (194) to avoid the "runaway tendencies of federal common law untethered" lest "we would be awash in 'federal common law' rules."

Rather, as provided by Section 34 of the Federal Judiciary Act of September 24, 1789, C. 20, 28 USC 1652:

> The laws of the several states except where the Constitution treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States where they apply.

Respectfully, the Objector's claims seem precisely on some brooding omniscience or gnosis of what they conceive the law should be so as to include them rather on the "articulated voice of sovereign" commended in <u>Erie</u> which has excluded them under the present circumstances. Further, Article 24 of the Warsaw Convention clearly states that domestic law determines "the persons who have the right to bring suit." It provides:

> Article 24
>
> 1.   In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

Since the Warsaw Convention is "pass-through" legislation, the relevant wrongful death statute on "who are the persons who have the right to bring suit" is that of New York, where decedents was domiciled and his legal representative appointed.

In the end, the present question on appeal is governed by the law of this Lockerbie case established in <u>Pescatore v. Pan American,</u> 97 F.3d 1 (2nd Cir., 1996), wherein the Court held that the law of the domicile of the decedent and his surviving spouse, in that case Ohio, should govern. Here, decedent Charles T. Fisher was a domiciliary of New York, according to the Complaint. In New York and under the Flatow Amendment, only the personal representative was authorized to bring the wrongful death action, as occurred and was settled. Accordingly, the objectors' claims must be dismissed.

3.   PURSUANT TO RULE 17(a) AND THE RELEVANT CASE LAW, ONLY THE PERSONAL REPRESENTATIVE HAS STANDING TO SUE FOR THE WRONGFUL DEATH OF DECEDENT. THE DISSIDENT RELATIVES HAVE NO STANDING TO

BRING AN ACTION, ESPECIALLY WHERE THE PERSONAL REPRESENTATIVES HAS ALREADY BROUGHT AN ACTION.

As claimed in the Complaint, decedent was a domiciliary of New York. In accordance with Pescatore v. Pan American World Airways 97 F.3d 18 (2nd Cir. 1996), the state of domicile provides the applicable wrongful death law. The New York Estates Power and Trust Law 5-4.1(1) provides that the personal representative alone is empowered to bring a wrongful death action. This is precisely what was done by the legal representative, Barbara Liberman, who accepted a settlement.

Federal Rule of Civil Procedure 17(a) provides in pertinent part:

> (a) Real Property in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian...or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought.

The discordant action by the dissenters is inappropriate, as Fed.R.Civ.P. 17 and the applicable case law uniformly exact that an action for damages sustained as a result of the death of an individual must be brought in the name of the personal representative of that person's estate authorized by statute, regardless of whether the underlying cause of action is derived from common law or statute. See, e.g.: Beiswenger Enterprises Corp. v. Carletta, 86 F.3d 1032 (11th Cir. 1996)(wrongful death maritime action involving parasailing in Florida under Limitation of Liability Act, 46 U.S.C. Appx. Section 183(a); whether issue decided under maritime law, Florida law, or New York law, there was only a single claim arising from one death which belonged to personal representative and the beneficiaries of estate had to share in single judgment, if any, obtained by personal representative); In Re: Midland Enterprises, Inc., 886 F.2d 812 (6th Cir. 1989). (Only person who can bring a Moragne non-statutory admiralty action for wrongful death is personal representative of deceased; there is only one claim, that of the

personal representative; <u>Nejad v. U.S.</u>, 724 F.Supp. 753 (C.D.Ca. 1989)(families and dependents of passengers who perished aboard Iranian Airliner shot down by missile fired by U.S.S. Vincennes lacked standing to bring wrongful death action under DOHSA, where they did not allege they were personal representatives of passengers); <u>Cruz v. Korean Airline Co.</u>, Ltd., 838 F. Supp. 843 (S.D.N.Y. 1993)(under New York's Wrongful Death Statute, right to bring wrongful death action on behalf of decedent, passenger in airliner shot down, is exclusively with the personal representative of the decedent who alone has the authority to prosecute and settle the claims of the beneficiaries); <u>Zicherman v. Korean Airlines, Inc.</u>, 146 F.R.D. 61 (S.D.N.Y. 1992)(husband of passenger who was killed in airplane crash did not have standing to bring claim; claim could only be raised by passenger's estate, against which husband may have claim as distributee). <u>Alcabasa v. Korean Airlines Co., Ltd.</u>, 62 F.3d 404 (D.C. Cir. 195)(under DOHSA, only the personal representative of the deceased may bring suit for wrongful death of passenger in airliner shot down by soviet fighter over Sea of Japan.)

In short, the uniform Federal case law regarding standing to sue in a wrongful death action requires that the action be brought by the personal representative of the estate of the decedent. This applies whether suit is based on a federal act, federal maritime law or common law. The rationale for this rule is grounded in common sense; to allow otherwise would be to open the floodgates to a myriad of individual law suits by purported "survivors" or "heirs" with no clearly defined parameters.

It must be remembered that the Federal Rules of Civil Procedure apply in all suits of a civil nature brought in federal court absent a direct expression by Congress of contrary intent. <u>Califano v. Yamasaki</u>, 442 U.S. 682, 699-700, 99 S.Ct. 2545, 61 L.Ed. 2d 176 (1970). Under Rule 17(a), the executor or administrator's right to sue may be granted by either state or federal

law. The present fractious action by the dissidents flies in the face of the prevailing Federal jurisprudential philosophy to achieve a concurs us of all claimants in one proceeding. For this very purpose, Rule 17(a) as well as Rule 19 on Mandatory Joinder and Rule 23 on Class Actions, were enacted by Congress.

Perhaps, Plaintiff filed this improper action because he was at odds with the personal representative regarding settlement. They were looking to the Court to provide a mechanism by which they might be assured their proportionate share of settlement proceeds. It is submitted that the only proper method for doing this would have been through the timely filing of a petition to intervene in the Personal Representative's actions, as envisioned by Fed.R.Civ.P. 24. See, e.g., Smith v. Clark Sherwood Oil Field Contractors, 457 F.2d 1339, 1345 (5th Cir. 1972); Zicherman v. Korean Airlines, Inc., supra; Alcabasa v. Korean Airlines Co., Ltd., supra, 62 F.3d at 408. It is within this procedural context that a determination could have appropriately been made as to whether the personal representative was or was not properly exercising her fiduciary duties owed to the estate. This would accord with applicable law and protect the rights of all concerned.

Because the Objector adamantly failed to intervene in the actions brought by the personal representatives, his independent actions is barred procedurally and on the merits.

4. THE PRESENT ACTION IS TIME-BARRED.

Section(b) of the Flatow Amendment provides:

(b) Provisions related to statute of limitations and limitations on discovery that would apply to an action brought under 28 USC 1605(f) and (g) shall also apply to actions brought under this section.

Pub. L. 104-298, Div. A., Title 1, Sect. 101(c) [Title V, Sect. 589], Sept. 30, 1996, 110 Stat. 3009-172 codified at 28 USC 1605, Note

28 USC 1605(f) in turn provides:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

The Note to 1605 indicates:

> 1996 Acts. Section 221© of Pub. L. 104-132 provided that: "The amendments made by this subtitle (amending this section and section 1610 of this title) shall apply to any cause of action arising before, on or after the date of the enactment of this Act [Apr. 24, 1996]."

Accordingly, any action under the ADEPA Act of April 24, 1996 which added 28 USC 1605(a)(7) providing for waiver of immunity against a nation designated as a state sponsor of terrorism or under the cognate Flatow Amendment of September 30, 1996 had to be commenced by April 24, 2006. As the Court is aware, there is no Federal rule one way or another whether the Complaint must be served within the Statute of Limitations, many states so exact. Therefore, it appears best to apply the law of the jurisdiction where service must be made, here Scotland. The Summons in the present action was issued on April 28, 2006, four days after the Statute had run. It was purportedly not served (even if invalidly so) until May 12, 2006. "The date of commencement of an action in Scotland is the date of the execution of service on the defenders: Erskine, III.IV.3; Alston v. Macdougal (1887) 15R 78; Smith v. Duncan Stewart & Co., Ltd., per Lord President Clyde (1960) SC 329; Canada Trust Co. v. Stolzenberg (No. 2) (2000) 3 WLR 1376, 1397." BP Exploration Operating Co., Ltd. v. Chevron Transport, Scotland House of Lords 2001 SC(HL) 19 No. 14 (2001).  January 5, 2007, additionally the defense of failure to state a claim may be brought pursuant to rule 12 (h) at any time including at Trial.  This includes the defense of limitations.   As a corollary of this Court's Decision in Vine v. Republic of Iraq, 2006 U.S. Dist. Lexis 63716 (September 7, 2006) (D.D.C.., 01-2674-HHK) (Appeal

dismissed 2006, U.S. App. Lexis 30400; December 11, 2006) No. 06-7177) the present Complaint must be dismissed because of the Statute of Limitations. Plaintiffs did not bring action until 2005 over 16 years after the Lockerbie incident and some nine years after the ADEPA statute of April 24, 1996 waiver of immunity.

In Vine, this Court, dismissed the *Simon and Seyam* 2003 Complaints in connection with their being held as hostages in 1990 by Saddam Hussein at the time of the invasion of Kuwait.

"The Court reasoned: although a close one, the Court agreed with Iraq that the *Simon and Seyam* Complaints were not timely filed. The *Simon and Seyam* plaintiffs cited a number of cases that assertedly stand for the proposition that Congress specifically allowed for the bringing of suits, absent tolling, up to ten years from the date of enactment of the state-sponsored terrorism exception, rather than ten years from the date of cause of action arose. The Court said that the overwhelming majority of the cases cited involved Default Judgments with no mention of the Statutute of Limitations. In dicta, only given the procedural posture of the case. Thus, the Court found that the Statutute of Limitations had run on Plaintiffs' claims 28 U.S.C. § 1605 (f) says twice from the time when "the cause of action arose." Having determined that Plaintiff's claims arose, at the latest, in December, 1990, Plaintiffs had until December 2000 to file their Complaint, absent tolling. The Complaint in Simon, Civ. No. 03-69-1, was filed on March 18, 2003; and the Complaint in Seyam, Civ. 03-888, was filed on April 15, 2003. Importantly, the D.C. Circuit has held that equitable tolling "does not bring about an automatic extension of the Statute of Limitations by the length of the tolling period. "Phillips v. Heine, 299 U.S. App. D.C. , 259, 984, F. 2d 489, 492 (D.C. Cir. 1993)." Rather, under *Phillips,* even where a Plaintiff establishes circumstances justifying equitable tolling, the Plaintiff is given extra time to file a claim "only if he needs it." Id. [Emphasis *28] in original). If, however, the Plaintiff does not

need it, there is no basis for depriving the Defendant of the protection of the Statute of Limitations." Therefore, in order to "advance [the] important interests in evidentiary accuracy and repose, "a deadline will only be tolled by a reasonable period after the tolling circumstance [is] mended." Id; see also <u>Chung v. U.S. Dept. Of Justice,</u> 357 U.S. App. D.C. 152, 333 F 3d 273, 279 (D.C. 2003) (stating that equitable tolling "merely ensures that the Plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit.)".

"Applying these principles, the D.C. Circuit held in Phillips that a Plaintiff is not entitled to the benefit of the equitable tolling doctrine when the limitations period has not run by the time the Plaintiff discovers all of the facts necessary to support her claim."

"As noted above, FSIA was amended in 1996 to allow a Plaintiff to pursue a claim against a foreign state for its involvement in certain acts of terrorism. See 28 U.S.C. § 1605 (f). In doing so, Congress specifically stated that the ten-year limitations period was tolled for "the period during which the foreign state was immune from suit." However, because more than four years remained in the limitations period at the time Iraq's immunity was abrogated, the "presumption" that Plaintiffs could have brought suit" "within the statutory period" applies. See <u>Cada,</u> 920 F 2d at 452; <u>Phillips,</u> 984 F 2d 492. Accordingly, under D.C. Circuit cases, the period applicable to Plaintiff's claims does not give rise to any equitable reason to toll the statutory deadline."

"Under the principles espoused in Phillips, this length of time exceeds what was reasonably necessary and, therefore, precludes the application of equitable tolling. Accordingly, the Complaints in *Simon and Seyam* are time-barred and must be dismissed."

V.   IT IS RESPECTFULLY SUGGESTED THAT THE COURT SHOULD ABSTAIN FROM EXERCISING ITS JURISDICTION SINCE THE MATTER BEFORE THE COURT HAS BECOME A POLITICAL QUESTION AND IS NON-JUSTICIABLE IN NATURE.

The Statute of Limitation for the Lockerbie matter ran on April 24, 2006. The whole matter is largely, if not totally, concluded. All personal representatives have concluded

settlement with the defendants. On May 15, 2006 Secretary of State Rice indicated that Libya would be removed from the list of terrorist nations, as later formally occurred on June 30, 2006. Thus, the 28 USC 1605(a)(7) ADEPA waiver if jurisdiction, for acts of terrorism, no longer applies to Libya.

The decision of the Scottish Criminal Trial Review Commission whether Al-Megrahi will be given a new proceeding is expected shortly. It is reported that there has been testimony before the Commission that evidence was fabricated against him and Libya, by the CIA and FBI.

It seems best to refer the present Plaintiff Objector to his available state actions against the personal representatives of his decedent if he believes he was entitled to a share in the $10M settlement for his decedent. With the removal of Libya from the list of terrorist nations, there is a question of Justiciability, and whether the present action should be permitted to continue. Doe v. Israel, 400 F.Supp. 2d 86 (D.D.C. 2005); Schneider v. Kissinger, 310 F. Supp. 2d 251 (D.D.C. 2004); Sampson v. Germany, 250 F. 3d 1145 (7th Cir., 2001).

Since we are now reverting back to 28 USC 1605(5), that basically covers automobile accidents involving consuls and ambassadors, the sovereign and its officials are immune for actions that do not occur in the United States. To allow the independent action for intentional inflection of emotional distress, in any event, seems inconsistent with the symmetry of the FSIA that disallows actions for intangible personal rights. Thus, 28 USC 1605(5) provides:

This paragraph shall not apply to

(B) any claim arising out of malicious prosecution, abuse of process, liable, slander, misrepresentations, deceit, or interference with contract rights.

## CONCLUSION

For all these reasons, Plaintiffs' actions should be dismissed for lack of standing, and Justiciability, and as time barred.

                                                  Respectfully Submitted,
                                                  MATTIONI, LTD.

Date:  February 27, 2007        BY:    _____/s/_____
                                                           Dante Mattioni, Esquire

                                                           Attorney for Defendant,
                                                           Abdelbaset Ali Al-Megrahi