# Exhibit C

Case 1:05-cv-02454-HHK   Document 24-4   Filed 03/01/2007   Page 1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES OWENS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT )<br>OF JUSTICE, et al., )<br>Defendants. )<br>)<br>_____) | Civil Action No: 1:04CV1701 (JDB) |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

In its Memorandum Opinion and Order of December 1, 2006, the Court deferred ruling on the parties' cross-motions for summary judgment and ordered defendants to provide additional materials in support of their argument that the documents requested by plaintiffs are exempt from disclosure under Exemption 7(A) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7)(A). See Order (Dec. 1, 2006) (dkt. # 26); Mem. Op. (Dec. 1, 2006) (dkt. #17) at 15. The Court has further ordered that the additional materials submitted by defendants must comply with the D.C. Circuit's decision in Bevis v. Dep't of State, 801 F.2d 1386, 1388-89 (D.C. Cir. 1986). Mem. Op. at 14. Accordingly, defendants have taken the following steps: (1) they have re-categorized the documents at issue into functional categories; (2) they have conducted a document-by-document review in order to assign the documents to the proper, functional category; and (3) they have provided a supplemental declaration that explains the new categorization of the documents and how release of each category of documents would interfere

with law enforcement proceedings. The Second Declaration of David M. Hardy, attached hereto, describes the measures taken by the Federal Bureau of Investigation ("FBI") to comply with the Court's Order and explains why Exemption 7(A) applies to the documents at issue, because their release would interfere with a law enforcement investigation and other proceedings. As explained below, because the FBI has complied with the Court's Order of December 1, 2006, and has established that FOIA exemption 7(A) applies to the documents at issue, summary judgment should be granted in favor of defendants.[1]

## ARGUMENT

Exemption 7(A) of the FOIA authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). As this Court has noted, to establish that

---

[1] Defendants believe the other exemptions asserted and described in their Motion for Summary Judgment ("Defs. Mem.") (dkt #14) provide alternate grounds for granting that Motion. However, because the Court has ordered that the instant brief be dedicated exclusively to the applicability of 5 U.S.C. § 552(b)(7)(A), defendants do not address those additional FOIA exemptions and bases for summary judgment here.

Defendants note that the FBI initially asserted that FOIA Exemption 7(A) applied to all records responsive to plaintiffs' FOIA request because all responsive documents were located in the agency's investigative files for an ongoing law enforcement investigation. However, further review during the course of this litigation has caused the FBI to release those portions of responsive documents as to which Exemption 7(A) had been the only applicable exemption, when the agency determined that such a release would not jeopardize future investigative or prosecutorial efforts. See Declaration of David M. Hardy (Exhibit 1 to Defs. Mem.) ¶ 82; Second Declaration of David M. Hardy (Attachment 1 hereto) at notes 3 & 4; see also note 3, infra. Even though the FBI no longer asserts that Exemption 7(A) applies to the now-released portions of these documents, it continues to assert the application of other exemptions to the withheld portions of those documents, as discussed in its previously submitted summary judgment briefing and declaration. Thus, if the Court grants summary judgment in favor of the FBI on the basis of Exemption 7(A), some of the other exemptions asserted by the FBI would remain to be addressed.

2

requested records are exempt from disclosure under 552(b)(7)(A), defendants must show, first, that the records have been compiled for law enforcement purposes, and, second, that release of the records could reasonably be expected to interfere with a concrete, prospective law enforcement proceeding. See Mem. Op. at 9; Bevis, 801 F.2d at 1388-89. The Court noted that there is no dispute here that defendants have met this first criterion. Id.[2] As to the second criterion, the Court found that the declaration submitted by the FBI did not provide sufficient information for the Court to adjudicate defendants' assertion that the documents were exempt from disclosure under FOIA Exemption 7(A). See Mem. Op. at 10-11. In order to establish that disclosing documents would interfere with a law enforcement investigation, defendants "need not proceed on a document-by-document basis, detailing to the court the interference that would result from the disclosure of each of them." Bevis, 801 F.2d at 1389. Instead, defendants may "take a generic approach, grouping documents into relevant categories that are 'sufficiently distinct to allow a court to grasp how each . . . category of documents, if disclosed, would interfere with the investigation.' " Id. (quoting Crooker v. Bureau of Alcohol, Tobacco, and Firearms, 789 F.2d 64, 76 (D.C. Cir. 1986) (internal citation omitted)). The D.C. Circuit has held that if an agency wishes to "adopt this generic approach" it must complete a:

> three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.

---

[2] Because the Court's December 1, 2006 order appears to recognize that defendants have established that the records at issue were compiled for law enforcement purposes, see Mem. Op. at 9, defendants do not address that issue here but instead rely upon their previous submissions. See, e.g., Defs. Mem. at 6-10; 1st Hardy Decl. ¶ 80.

3

Id. at 1389-90. In the instant case, the Court found that six of the seven categories of documents previously identified by defendants in the first Declaration of David M. Hardy were not "functional," as required by Bevis, and therefore "do not permit the Court to assess the likelihood that release of the requested information would interfere with a pending or prospective enforcement proceeding." Mem. Op. at 11. The category apparently accepted by the Court as sufficient to justify application of Exemption 7(A) is "Third-Party Communications." The categories rejected by the Court as identifying only the "various methods of transmittal without providing . . . the type of information being transmitted," id., are: Electronic Communication, Teletype, Message Re-Addressal Forms, Memorandum, FBI Routing/Action Slip, and Work Product Canvas Forms. Mem. Op. at 10; Declaration of David M. Hardy (1st Hardy Decl.) ¶ 83. In requiring the FBI to identify functional categories for the documents withheld, the Court recognized, however, that "defendants are walking a fine line and that courts reviewing the withholding of agency records under Exemption 7 cannot demand categories 'so distinct as prematurely to let the cat out of the investigative bag.' " Mem. Op. at 11 (quoting Curran v. Dep't of Justice, 813 F.2d 473, 475 (1st Cir. 1987).

Pursuant to the Court's Order of December 1, 2006, the FBI has conducted an additional, document-by-document review of all of the records responsive to plaintiffs' FOIA request and withheld by the FBI pursuant to Exemption 7(A). See Second Declaration of David M. Hardy, ¶ 16 (Attachment 1).[3] During this re-review process, the FBI has re-categorized each of the

---

[3] During this review process, the FBI determined that portions of a small number of documents, which contained only the type of administrative information found on blank FBI routing/action slips (i.e., the Message Re-Addressal Forms described in Paragraph 83(c) of the first Hardy Declaration) could be released. Accordingly, these documents have been released in pertinent part to the plaintiffs. See Letter from Elisabeth Layton, U.S. Dep't of Justice, to

4

withheld documents into one of the following categories: Strategic Documents; Documents Containing Information Shared Between the FBI and Foreign Law Enforcement Agencies and Between the FBI and Other U.S. Government Agencies; Source Information Documents; Evidentiary Materials; and Administrative Documents. See 2nd Hardy Decl. ¶¶ 17-21. The FBI has described each category and identified the documents that fall within each category. See id.

As discussed in more detail below, the explanations provided for each of these categories in Mr. Hardy's second declaration, see 2nd Hardy Decl. ¶¶ 17-21, enable the Court to "trace a rational link between the nature of each category of document and the . . . . likely interference" with a law enforcement proceeding if that category of documents were released. Crooker, 789 F.2d at 76. Similar categories and descriptions have been accepted by courts as sufficient to justify withholding pursuant to Exemption 7(A). See, e.g., ACLU v. FBI, 329 F.Supp.2d 179, 191 (D.D.C. 2006) (finding FBI had properly invoked Exemption 7(A) and met the requirements of Bevis where declaration explained that release of documents could impede success of investigations and lead to harassment and intimidation of individuals, as well as by revealing the nature and scope of the investigations); Edmonds. v. FBI, 272 F.Supp.2d 35, 54-55 (D.D.C. 2003) (withheld material fell into two functional categories, evidentiary and investigative materials); Judicial Watch v. FBI, 2001 WL 35612541, *5 (D.D.C. 2001) (functional categories included FBI Investigative File Numbers, Investigative Case Caption, and Source Information); Ayyad v. U.S. Dep't of Justice, 2001 WL 654133, *3 (SDNY 2002) (functional categories included Evidentiary/Investigative Materials and Source Statements). Defendants respectfully submit that they have met the requirements of Bevis by identifying the following functional

---

Thomas Fortune Fay, Esq. (Jan. 30, 2007), and enclosures thereto (Attachment 2).

5

categories of documents and explaining why Exemption 7(A) justifies withholding each category of records from disclosure.

1. <u>Strategic Documents</u>. The first functional category of documents identified by the FBI is "Strategic documents" which "relate to the FBI's strategic approach to the terrorist investigation into the Kenya and Tanzania Embassy bombings." 2nd Hardy Decl. ¶ 17. Encompassed within this category are documents that describe in detail information received from and/or shared with other law enforcement agencies and reveal the overall strategy of the FBI's investigation. 2nd Hardy Decl. ¶ 17. Because release of such information would provide any member of the public with a "bird's eye view of the FBI's strategic plan," <u>id.</u>, it might enable potential suspects to circumvent investigative techniques and thus be likely to interfere with enforcement proceedings.

2. <u>Documents Containing Information Shared Between The FBI And Foreign Law Enforcement Agencies And The FBI And Other U.S. Government Agencies</u>. Documents within this category contain information received from foreign law enforcement agencies and other United States government agencies, as well as information provided by the FBI to foreign law enforcement agencies and other United States government agencies, all in a collaborative effort to identify possible suspects in the Embassy bombings. <u>Id.</u> ¶ 18. Disclosure of these documents would reveal the names of possible suspects, thus allowing such individuals to take evasive action to avoid capture. Further, release of this information would endanger the lives of sources that provided the underlying information, and thus deter other potential sources from providing information in the future. In addition, release of this category of information would alert those individuals identified by the FBI or a foreign law enforcement agency that they might be

"persons of interest" in the FBI's investigation into the Embassy bombings and thus enable such individuals to take evasive actions that might impede the FBI's efforts to gather further evidence in its ongoing investigation fo the Embassy bombings.

   3. <u>Source Information Documents.</u> As Mr. Hardy's declaration explains, source statements are among the "principal tools" used to prosecute the perpetrators of crimes such as the Embassy bombings. <u>Id.</u> ¶ 19. Releasing the identities of such sources could subject these sources to retaliation, intimidation, or harm, thus compromising the ongoing investigation of the Embassy bombings and – through the likely chilling effect on other potential sources – possibly affecting future prosecutions as well. <u>See</u> 2nd Hardy Decl. ¶ 19. Furthermore, because most of the source information could only have come from one particular source, releasing information obtained from sources could reasonably be expected to identify the sources and have the same chilling effect. <u>See id.</u> The likelihood of intimidation of witnesses and other sources involved in an investigation has been found to justify the withholding of information "[o]n numerous occasions." <u>Ctr. for Nat'l Security Studies</u>, 331 F.3d 918, 929 (D. C. Cir. 2003) (citing <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214 (1978) and listing circuit court cases). For example, an affidavit submitted by the FBI has been held to provide an adequate basis for withholding records pursuant to Exemption 7(A) when it identifies two functional categories, "evidentiary materials" and "investigative materials." <u>Edmonds</u>, 272 F. Supp.2d at 55. In <u>Edmonds</u>, the FBI affidavit explained that release of the documents would reveal, <u>inter alia</u>, the cooperation of particular individuals and identity of potential witnesses." <u>Id.</u> Similarly, here, the FBI has provided the Court with sufficient description of the contents of these documents to justify withholding them pursuant to Exemption 7(A).

4. <u>Evidentiary Documents</u>. This category includes physical evidence and other evidence obtained during the FBI's investigation of the Embassy bombings. 2nd Hardy Decl. ¶ 20. Disclosure of these records could be detrimental to the success of the current investigation and any prosecutions arising from this investigation by permitting subjects to formulate a strategy as to how the evidence could be contradicted in court. The FBI has refrained from describing the records within this category in greater detail because to do so could critically impair the investigation by identifying the direction of the FBI's investigation and possibly revealing the very information the FBI seeks to protect. 2nd Hardy Decl. ¶ 20. As this Court has recognized, in these circumstances a more detailed description may not be required. <u>See</u> Mem. Op. at 11 (citing <u>Curran</u>, 813 F.2d at 475).

5. <u>Administrative Documents</u>. Within this category are two kinds of information, the disclosure of which would interfere with the law enforcement proceeding at issue. The first kind of information concerns details regarding the "type, manufacture, and model numbers of the secure equipment used throughout this investigation." <u>Id.</u> ¶ 21. Release of this information to the public would give terrorists and other criminals the opportunity to devise the means to intercept the FBI's secure communications, thereby hampering the law enforcement investigation. <u>Id.</u> The second kind of information within this category contains details about the travel itineraries of FBI agents deployed to investigate the Embassy bombings. <u>Id.</u> This information includes the number of agents deployed, the dates of travel and lengths of their trips, and their departure and arrival locations. <u>Id.</u> Because release of this information would reveal the number of agents deployed, as well as their rotational schedules, it might place the lives of FBI Agents in jeopardy. <u>Id.</u> Accordingly, release of this information would interfere with the

ongoing investigation and prospective law enforcement proceeding related to the Embassy bombings.

Each of the five categories described above satisfy what the D.C. Circuit has described in Bevis as "the Crooker functionalism requirement" because "they allow the court to assess the FBI's representations of how release of the documents would result in interference" with ongoing law enforcement investigation and any future prosecution. Bevis, 801 F.2d at 1390. Thus, the FBI has defined functional categories, assigned documents to the proper category based upon a document-by-document review, and explained to the Court how the release of each category would interfere with law enforcement proceedings. Bevis. at 1389-90. Once the Court is satisfied that the FBI has met these requirements, it must apply the appropriate deference to the FBI's predictions about the risk of disclosing the records at issue. The D.C. Circuit has emphasized that the FBI's predictive judgments about the risks of disclosure in this context are entitled to particular deference because disclosure implicates national security concerns. As the Court of Appeals has explained:

> America faces an enemy just as real as its former Cold War foes, with capabilities beyond the capacity of the judiciary to explore. Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information . . . . It is abundantly clear that the government's top counterterrorism officials are well-suited to make this predictive judgment. Conversely, the judiciary is in an extremely poor position to second-guess the executive's judgment in this area of national security.

Ctr. for Nat'l Security Studies, 331 F.3d at 928. Applying the mandated discretion to the sworn declarations submitted by the FBI in this matter, the court should conclude that the records at issue have been properly withheld pursuant to Exemption 7(A).

9

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion for summary judgment be granted on the basis of 5 U.S.C. § 552(b)(7)(A), as well as for the other reasons set forth in their previous briefing, and that plaintiffs' cross-motion for summary judgment be denied.

Dated: February 1, 2007                                      Respectfully submitted,


PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director


*/s/ Elisabeth Layton*
ELISABETH LAYTON, D.C. Bar #462227
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Room 7110
Washington, D.C. 20530
Tel.: (202) 514-3183
Fax: (202) 616-8470
elisabeth.layton@usdoj.gov

Attorneys for Defendants